## THE DISCRETIONARY POWERS OF BOARDS OF EDUCATION IN THE CENTRALIZATION OF TOWNSHIP SCHOOLS.

[Circuit Court of Clinton County.]

THE STATE OF OHIO, EX REL THADDEUS A. HAINES, ET AL, V. THE BOARD OF EDUCATION OF CHESTER TOWNSHIP CENTRALIZED SCHOOL DISTRICT, CLINTON COUNTY, OHIO, ET AL.

Decided, November 28, 1903.

*Schools—Centralization of—Mode and Manner of, Discretionary with Board—Hostility of Board—Dilatory Action—Change of Plan from One to Two Schools—Mandamus—Injunction.*

1. While the centralization of township schools may be made imperative upon a board of education, it is only when the board deems it *necessary* to purchase a site and erect a school building thereon, that it is required so to do by the provisions of the act of April 16, 1900, found in 94 O. L., at page 317.
2. Either the original board or its successor, acting in good faith before the building is erected or commenced, may reconsider the first action taken in that behalf, and decide to centralize the schools of the township in two places instead of one, and its discretion as to the mode and manner of centralizing the schools can not be controlled by mandamus, notwithstanding its judgment may be at fault; if at the time of such reconsideration there is a contractor holding a valid contract for the erection of the building, his remedy is at law.
3. Hostility of a board to centralization, dilatory action in effecting it, and the appropriation of $1,000 for expenses of litigation, would not warrant a finding that the board acted in such bad faith as to require a court to interpose by a writ of mandamus.

4. Injunction will not lie to restrain a board of education from main-
taining separate schools in joint sub-districts after a vote for cen-
tralization.

GIFFEN, J.; SWING, J., and JELKE, J., concur.

As we construe the act of April 16, 1900 (94 O. L., 317), we
think counsel for relators lay too great stress upon the imperative
duty of the board of education to purchase a site and erect a suitable
building thereon.   It is only when the board deems it *necessary* to
purchase a site and erect a building thereon that the act requires
them to do so, and there is nothing in the act itself preventing the
original board, before the building is erected or commenced, from
reconsidering the action taken, and resolving to centralize the
schools not in one but in two places.   It may have made a mistake
in the first instance, and the very discretion vested in it by the act
carries with it the power and duty to correct that mistake.

If the original board may reconsider its action in this respect,
then its successor, being clothed with all the powers of the old board,
may exercise them, with a like discretion, subject, however, to the
rights of a party to any contract the former board may have made.
It may be said that successive boards may thus undo all that their
predecessors have done, prevent the centralization of the schools,
and ultimately defeat the will of the people; but it is only the
natural result of our elective system of government and is in reality
the expression of the will of the people through its chosen repre-
sentatives.   Such boards can not legally refuse to centralize the
schools because the law makes this duty imperative, but the mode
and manner of performing it is discretionary, and if the duty is
not performed by the old board such discretion is vested in its
successor.   If the building contractor has a valid contract, his
remedy is an action at law, and so long as the present board of
education is proceeding in good faith to centralize the schools of
the township, its discretion with respect to the manner of doing
it can not be controlled by the extraordinary writ of mandamus,
although its judgment may be faulty.   While the purchase of a site
is an incident of the centralization of the schools, it is not necessarily
included in that term as defined by the first section of the act of
the General Assembly, and being effected by the predecessor of the
incumbent board, each possessing like authority in the premises,

it does not come within the principle announced nor the statute construed in the case of *Moss* v. *The Board of Education,* 58 O. S., 354. We are of the opinion, therefore, that the action of the present board in proceeding to centralize the schools in two places within the township district, whether wise or unwise, if done in good faith, can not be prevented by mandamus.

The hostility of the board to centralization, its dilatory action in effecting it, and the appropriation of one thousand dollars for the expenses of litigation, may be open to just criticism, but do not warrant a finding that it acted in such bad faith as to require this court to interpose by writ of mandamus. The relators, by an amendment to the position, seek to enjoin the defendant board from maintaining separate schools in the joint sub-districts which are under the control of the Board of Education of Chester Township. In the case of *Elias D. Harlan et al,* v. *The Board of Education et al,* it was not necessary, nor did this court decide, that such joint sub-districts were abolished by the vote for centralization. Section 3927-1, Revised Statutes, provides in express terms for the abolishment of sub-districts only, and whatever doubt may have existed as to whether joint sub-districts were, by implication, included in the term sub-districts has been removed by Section 3927-5, Revised Statutes, as amended May 12, 1902. Besides, if the board of education is required by law to include joint sub-districts in centralizations, they could be compelled to do so by mandamus under the original petition, and injunction would not be an appropriate remedy. The object of mandamus is to compel performance, while the office of injunction is to restrain.

The injunction and mandamus will each be refused.

Judge Giffen does not concur in the finding that the joint sub-districts are not abolished.

*D. B. Van Pelt* and *Smith & Clevenger,* for the relators.

*Thorpe & Miller, A. E. Clevenger* and *L. J. Walker,* for defendants.